ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| HENRY AREIZAGA RIVERA<br>APELADO<br><br>V.<br><br>COMISIONADO DEL NEGOCIADO<br>DE LA POLICIA DE PUERTO RICO P/C HON. ANTONIO LÓPEZ FIGUEROA<br><br>APELANTES | KLAN202300666 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2023CV03059<br><br><br>Sobre:<br>Revisión administrativa |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez

Ortiz Flores, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de septiembre de 2023.

Comparece la parte apelante, Gobierno de Puerto Rico (Estado), por conducto de la Oficina del Procurador General, en representación del Negociado de la Policía (Negociado). Solicita la revocación de una *Resolución* emitida y notificada el 15 de mayo de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), en la cual el TPI concluyó que el Negociado estaba impedido de considerar las convicciones por delitos grave de la parte apelada, señor Henry Areizaga Rivera (Sr. Areizaga; apelante), en consideración a la solicitud de licencia de armas que este presentó. El TPI determinó que los delitos graves por los cuales fue convicto el apelado no estaban contenidos en el Artículo 2.09 de la Ley de Armas de 2020 y, a su vez, porque la convicción había sido eliminada del certificado de antecedentes penales. En consecuencia, le ordenó al Negociado expedir la licencia de armas solicitada.

Por los fundamentos que expondremos a continuación, revocamos la sentencia apelada.

**I**

El apelante sometió ante el Comisionado del Negociado de la Policía una solicitud de licencia de armas, identificada con el número 547906.[1] La

---

[1] Apéndice del recurso (Apéndice) pág. 1.

Número Identificador

RES2023_____

solicitud del apelante fue denegada por el Negociado "por el Artículo 2.09 y [por no cumplir]" con los requisitos en Ley."[2] Surge del expediente ante nuestra consideración que la denegatoria fue por incumplir con el Artículo 2.09 de la Ley Núm. 168-2019 por haber sido convicto por delitos graves que conllevan conducta constitutiva de violencia doméstica bajo lo dispuesto en la Ley Núm. 54-1989 y por maltrato de menores conforme a lo dispuesto en la Ley Núm. 246-2011.[3]

Inconforme con la denegatoria, el Sr. Areizaga presentó una solicitud de reconsideración, bajo lo dispuesto en el Artículo 2.02 (d)(4) de la Ley de Armas de 2020 y el Artículo 2.07 del Reglamento para Administrar la Ley de Armas de Puerto Rico, titulada *Solicitud de Revisión y/o Vista Administrativa* ante el Comisionado de la Policía, recibida por este el 7 de marzo de 2023. Transcurrido el término desde la presentación de la solicitud de reconsideración sin recibir respuesta, el Sr. Areizaga presentó el 10 de abril de 2023, una demanda en contra del Estado, titulada *Revisión Administrativa*[4] y una *Moción solicitando expedición de emplazamientos.*[5] El demandante reiteró ante el foro judicial su oposición a la denegatoria de la solicitud de licencia de armas y expuso que no surge de la carta recibida del Negociado "cu[á]les son los hechos que dieron razón a la revocación de la licencia, o cuales requisitos de la Ley de Armas de 2020 [no cumple]" y que eso es "contrario a la Ley de Procedimiento[ ] Administrativo[ ] Uniforme, Ley 38 de 30 de junio de 2017."

El Estado presentó *Moción de Desestimación,*[6] el 27 de abril de 2023, y expuso lo siguiente:

> No existe duda que la parte demandante no cumple con el requisito del Artículo 2.09 de la de la Ley Núm. 168-2019, *supra*, de no tener convicciones por delitos graves. **El aludido Artículo es diáfano al proscribir la expedición de una licencia de armas a una persona que haya sido convicta en Puerto Rico —o en otra jurisdicción estadounidense—**

[2] Apéndice, pág. 1.
[3] Apéndice, pág. 1. Indicó que la denegatoria fue "mediante carta del 9 de febrero de 2023, depositada en el correo el 17 de febrero de 2023, y recibida por el Demandante el 22 de febrero de 2023." La ley era la vigente al momento de los hechos y luego entro en vigor la Ley Núm. 57-2023.
[4] Apéndice del recurso (Apéndice), págs. 1-3, con anejos a las págs. 4-13.
[5] Véase: Expediente electrónico en SUMAC, Caso civil número SJ2023CV03059, Entrada Núm. 2.
[6] Apéndice, págs. 13-23, con anejos a las págs. 24-26.

> **por delitos graves, por conducta constitutiva de violencia doméstica y por conducta constitutiva de maltrato de menores**. A la luz de lo anterior, el [Negociado] actuó correctamente al denegar la expedición de la licencia de armas a la parte demandante ya que, según surge, de la investigación realizada por el NPPR en los archivos digitales, de los anejos presentados junto al recurso de revisión, y de la admisión que hace la parte demandante en la alegación núm. 10 de ese recurso, esta fue convicta por violación al Artículo 76 de la derogada Ley Núm. 177-2003, conocida como Ley para el bienestar y la protección integral de la niñez, 8 LPRA sec. 450 y por violación al Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, conocida como "Ley para la [P]revención e Intervención con la Violencia Doméstica", 8 LPRA 631, fundamentos establecidos por el legislador en el Artículo 2.09 de la de la Ley Núm. 168-2019, *supra*, para rehusar expedir licencia de armas.
>
> Por lo tanto, **aun dando por ciertas las alegaciones bien hechas, el peticionario no ha expuesto una reclamación que justifique la concesión de los remedios solicitados**. Este Ilustre Foro no puede avalar que se le conceda una licencia de armas a una persona que fue convicta por maltrato de menores y violencia doméstica, aspecto proscrito por legislación. Particularmente, este Ilustre Foro debe ponderar no solo el marco de ley, sino al contexto histórico de violencia que vive Puerto Rico y la política pública actual del Gobierno, que declaró un estado de emergencia ante el aumento de casos de violencia de género en Puerto Rico.10 Consecuentemente, el Estado sostiene que el presente recurso debe ser desestimado al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R.10.2(5). (Énfasis nuestro.) (Notas al calce omitidas.)[7]

Añade el Estado, en cuanto a los antecedentes penales y el efecto de su eliminación en la investigación a los fines de expedir licencia de arma de fuego, lo siguiente:

> [E]l [Negociado], por mandato legislativo, **está autorizado a investigar más allá de lo que pueda aparecer en un certificado de antecedentes penales**, y así lo hizo el NPPR en este caso. Conforme lo exige el Artículo 2.02 (d)(3) de la Ley Núm. 168- 2019, supra, el [Negociado] investigó a la parte demandante y encontró que la parte demandante todavía tiene un historial criminal. En atención a ello, el Artículo 2.02 (d)(4) de la Ley Núm. 168-2019, supra, dispone que si tras una investigación realizada de los archivos digitales, el peticionario no cumple con todos los requisitos establecidos en esa Ley, no le será concedida la licencia de armas. De manera que, **confrontado el [Negociado] con el historial criminal de la parte demandante que incluye convicciones por maltrato de menores y violencia doméstica, estaba obligado por Ley a denegarle la licencia de armas**.
>
> Dado lo anterior, la determinación que tomó el [Negociado] de denegarle la licencia de armas a la parte demandante, se le debe conceder deferencia ya que se fundamenta en la Ley

---

[7] Apéndice, págs. 14-15.

> Núm. 168-2019, *supra*, el derecho vigente y la política pública del Estado de que ninguna persona con historial criminal tenga acceso a una licencia de armas. En ausencia de arbitrariedad, irracionabilidad o ilegalidad, el criterio de la [Negociado] debe prevalecer. La parte demandante tampoco ha logrado impugnar la presunción de corrección que le cobija a la denegatoria del NPPR a expedir o conceder la licencia de armas, pues solo se limitar a alegar que cumple con todos los requis[i]tos de la Ley Núm. 168-2019, *supra*, postura que queda derrotada por los documentos que obran en el expediente de autos que demuestran las convicciones previas de la parte demandante. Así pues, es forzoso concluir que el [Negociado] actuó razonablemente al considerar las convicciones previas de la parte demandante, por lo que procede confirmar la determinación que deniega la petición de licencia de armas presentada por la parte demandante. (Énfasis nuestro.) (Nota al calce omitidas.)[8]

El TPI emitió y notificó, el 28 de abril de 2023, una *Orden* que dispuso lo siguiente: "Parte Demandante replique." [9]

El 15 de mayo de 2023 se emitió y notificó la Sentencia[10] apelada, la cual revocó "la Resolución emitida por el Departamento de Seguridad Pública el 9 de febrero de 2023, SAIC-NILIAF-DRAEL-7-195" y ordenó "al Departamento de Seguridad Pública que emita la licencia de armas al Sr. Areizaga Rivera según solicitada."[11] El Estado presentó, el 26 de mayo de 2023, una *Moción de reconsideración*[12] y el TPI la declaró no ha lugar mediante una *Resolución* emitida y notificada el 30 de mayo de 2023.

Inconforme, el Estado presentó el 31 de julio de 2023 un *Escrito de apelación*, con el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al revocar la determinación del Negociado de la Policía que denegó la solicitud de la licencia de armas del apelado de conformidad con el Artículo 2.09 de la Ley Núm. 168-2019, el cual dispone que no se expedirá una licencia de armas a alguna persona que ha sido convicta de un delito grave, que conlleve conducta constitutiva de violencia doméstica al amparo de la Ley Núm. 54-1989 y maltrato de menores, según tipificada en la Ley 246-2011.

El 11 de septiembre de 2023, la representación legal del Sr. Areizaga presentó el *Alegato en oposición*. Con el beneficio de los escritos de ambas partes, resolvemos.

---

[8] Apéndice, pág. 22.
[9] Véase: Expediente electrónico en SUMAC, Caso civil número SJ2023CV03059, Entrada Núm. 10.
[10] Apéndice, págs. 27-33.
[11] Apéndice, pág. 33.
[12] Apéndice, págs. 34-41.

## II

### A. Ley de Armas de Puerto Rico de 2020

Por virtud de la doctrina de incorporación selectiva y lo dispuesto en la Decimocuarta Enmienda de la Carta de Derechos de la Constitución de los Estados Unidos de América, el Tribunal Supremo federal ha hecho extensivo a los estados de la Unión los derechos fundamentales allí consagrados; entre estos, el derecho fundamental a poseer y portar armas, contemplado en la Segunda Enmienda. Véase, Emdas. II y XIV, Const. EE. UU., LPRA, Tomo I. Además, el Alto Foro estadounidense ha reconocido los mismos derechos fundamentales a los ciudadanos americanos en Puerto Rico. *Pueblo v. Rodríguez López, et al.*, 210 DPR 753, 757 (2022).[13] Si bien es de carácter fundamental, el derecho de la Segunda Enmienda no es ilimitado ni irrestricto. Aun cuando garantiza el derecho individual a poseer y portar armas y se proscribe una prohibición absoluta, el Tribunal Supremo federal aclaró que la Segunda Enmienda "no reconoce un derecho a poseer y a portar cualquier arma, de cualquier manera y para cualesquiera propósitos." *Id.*, a la pág. 17, que cita a *District of Columbia v. Heller*, 554 US 570, 627 (2008); véase, además, *Rolón Martínez v. Caldero López*, 201 DPR 26, 37 (2018).

En *District of Columbia v. Heller*, *supra*, el Tribunal Supremo federal identificó ciertas instancias, en las que las limitaciones al referido derecho constitucional se presumen válidas (*longstanding prohibitions*). En *Pueblo v. Rodríguez López, et al.*, *supra*, nuestro Alto Foro, a modo de ejemplo y sin que se entienda como un listado taxativo, mencionó como válidas "las medidas que prohíban la posesión de armas a aquellas personas que son incapaces mentales o **convictos por delitos graves**;[14] en lugares

---

[13] Opinión de 28 de octubre de 2022.
[14] En la nota al calce número 5 de *Pueblo v. Rodríguez López, et al.*, *supra*, nuestro Tribunal Supremo aludió a *U.S. v. Moore*, 666 F.3d 313 (4to Cir. 2012), en que el Cuarto Circuito de Apelaciones sostuvo que la prohibición a la posesión y portación de armas a personas convictas de delito grave no violaba la Segunda Enmienda de la Constitución federal, pues era una medida presuntamente válida a la luz de *District of Columbia v. Heller*, 554 US 570 (2008). Idéntico resultado se observó en *U.S. v. Williams*, 616 F.3d 685 (7mo Cir. 2010). El Séptimo Circuito de Apelaciones determinó "que criminalizar la posesión y portación de armas de una persona convicta de un delito grave sobrevivía el escrutinio intermedio."

sensitivos, como las escuelas o edificios de gobierno; o que impongan ciertas cualificaciones para la venta de armas." (Énfasis nuestro.) *Pueblo v. Rodríguez López, et al.*, a las págs. 18-19; *District of Columbia v. Heller*, *supra*, a las págs. 626-627.

En armonía con los pronunciamientos judiciales federales, la Asamblea Legislativa de Puerto Rico promulgó la Ley Núm. 168 de 11 de diciembre de 2019, "Ley de Armas de Puerto Rico de 2020", 25 LPRA sec. 461, *et seq*. En su Artículo 2.02, incisos (a) (b) (c), se establecen los requisitos generales para que la solicitud de licencia de armas pueda ser radicada.[15] En lo que nos compete, el Artículo 2.02, inciso (a) (2), de la Ley de Armas de 2020, 25 LPRA sec. 462a (a) (2), estatuye que **todo peticionario debe tener un expediente negativo de antecedentes penales** y no estar acusado o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.09 del estatuto o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, a nivel federal o en cualquier país extranjero.

Asimismo, en el ejercicio delegado al Negociado para la expedición de licencias de armas, la Agencia está facultada en ley para realizar las investigaciones que sean necesarias en los archivos digitales a los que tenga acceso. En específico, el Artículo 2.02 (d) (1) (3) (4) de la Ley de Armas de 2020, 25 LPRA sec. 462a (d) (1) (3) (4), establece lo siguiente:

(d) Radicación de Solicitudes de Licencia de Armas:

(1) Toda solicitud de Licencia de armas por residentes en Puerto Rico, cumplimentada conforme a esta Ley, junto al pago correspondiente, habrá de radicarse en las Oficinas de Licencias de Armas, o en la Comandancia de Área de donde reside el peticionario, la cual deberá remitir dicha solicitud en un término no mayor de cinco (5) días a la Oficina de Licencias de Armas. **Recibido el pago por los derechos y los documentos, debidamente cumplimentados, se procederá de inmediato a realizar el cotejo electrónico, sobre el expediente negativo de antecedentes penales del peticionario.**[16]

.      .      .      .      .      .      .      .

(3) **A partir de que se acepte la solicitud para la expedición de una licencia de armas, la Oficina de**

---

[15] Véase, Artículos 2.01-2.02 del "Reglamento para Administrar la Ley de Armas de Puerto Rico de 2020", de 17 de marzo de 2020 (Reglamento Núm. 9172).
[16] Véase, Artículo 2.03 (3) del Reglamento Núm. 9172.

> **Licencias de Armas, determinará y certificará por escrito si el peticionario cumple o no, con los requisitos establecidos en esta Ley para la expedición de la licencia de armas. Esto deberá lograrse mediante una investigación en los archivos digitales** de cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad extranjera o internacional a la que pueda tener acceso, incluyendo los archivos del *National Crime Information Center (NCIC)*, del *National Instant Criminal Background Check System (NICS)*, el Sistema de Información de Justicia Criminal (SIJC-PR) y el Registro Criminal Integrado (RCI).[17]
>
> (4) **De resultar la investigación realizada por la Oficina de Licencias de Armas de los archivos digitales en una determinación de que la persona no cumple con todos los requisitos establecidos en esta Ley, no le será concedida la licencia de armas**, pero sin menoscabo a que el peticionario pueda solicitarla nuevamente en un futuro. […] (Énfasis nuestro.)

Es decir, el Artículo 2.02, incisos (a) (b) (c), de la Ley de Armas de 2020, *supra*, enumera los requisitos generales que todo peticionario debe cumplir para que pueda presentar su solicitud de licencia de armas y esta sea aceptada para evaluación. Entre tales requisitos se encuentra un certificado negativo de antecedentes penales. De ninguna manera implica la concesión automática de la credencial. Luego, el Artículo 2.02, inciso (d) (1) (3) (4) de la Ley de Armas de 2020, *supra*, dispone que el expediente negativo de antecedentes penales debe ser cotejado por el Negociado. Este, además, deberá certificar mediante una investigación de los archivos digitales accesibles que el peticionario cumple con los requisitos del estatuto. De incumplir con algún requisito, no se expedirá la licencia de armas.

Al respecto, el Artículo 2.09 de la Ley de Armas de 2020, 25 LPRA sec. 462h, que versa sobre los **fundamentos para rehusar la expedición de licencias**, dispone en lo pertinente lo siguiente:

> **La Oficina de Licencias de Armas no expedirá licencia de armas**, o de haberse expedido se revocará, la licencia de armas **de cualquier persona que haya sido convicta, en Puerto Rico**, en cualquier otra jurisdicción estadounidense **de cualquier delito grave** o su tentativa, por delito menos grave que conlleve violencia, por conducta constitutiva de violencia doméstica, según tipificada en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, o conducta constitutiva de acecho, según tipificada en la Ley 284-1999,

---

[17] Véase, Artículo 2.04 (2) del Reglamento Núm. 9172.

según enmendada, ni por conducta constitutiva de maltrato de menores, según tipificada en la Ley 246-2011, según enmendada, "Ley para la Seguridad, Bienestar y Protección de Menores".[18] [...] (Énfasis nuestro.)

Surge literalmente del estatuto que el Negociado deberá rehusar expedir la credencial de armas a quien incumpla el Artículo 2.09 de la Ley de Armas de 2020, *supra*; o, de haberla expedido, revocarla. Entre otras instancias, la imposibilidad de expedir la licencia se extiende cuando el peticionario ha sido convicto de cualquier delito grave o su tentativa, por delito menos grave que conlleve violencia, por conducta constitutiva de violencia doméstica o maltrato de menores.

**B. Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales**

De otra parte, la Ley Núm. 254 de 27 de julio de 1974, "Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales", 34 LPRA sec. 1725 *et seq.*, creó el marco legal para encomendar a la Policía de Puerto Rico la expedición de certificaciones de antecedentes penales; y para que se estableciese la reglamentación necesaria para la eliminación de ciertas convicciones del expediente penal. En el caso de **delitos graves**, siempre y cuando la persona exconvicta no esté sujeta al "Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores" ni al "Registro de Personas Convictas por Corrupción", **podrá solicitar en el Tribunal de Primera Instancia una orden para que se elimine la convicción del certificado de antecedentes penales**. Entre los requisitos a cumplir se encuentran el que hayan transcurrido cinco años desde que se cumplió la sentencia y la persona no haya cometido otro delito; tenga buena reputación en la comunidad; y se haya sometido a la muestra requerida por la Ley del Banco de Datos de ADN, de estar sujeta a ello. Art. 4 Ley Núm. 254-1974, 34 LPRA sec. 1725a-2. Por igual, el Artículo 7 de la Ley Núm. 254-1974, 34 LPRA sec. 1725, dispone que se deberá expedir un

---

[18] El lenguaje se reproduce en el Artículo 2.12, *Fundamentos para rehusar expedir licencias*, del Reglamento Núm. 9172.

certificado negativo, cuando de los archivos de la Policía no surja un expediente abierto de la persona.

Se desprende de la letra del estatuto que, luego del cumplimiento de los requisitos legales pertinentes, se autoriza al Negociado a eliminar del certificado de antecedentes penales las condenas por los delitos graves y menos graves. El Tribunal Supremo ha expresado que la intención de la Asamblea Legislativa al promulgar el estatuto fue "**potenciar la inserción de los exconvictos en la fuerza laboral y su consiguiente rehabilitación** mediante la eliminación de convicciones previas trascurrido el término dispuesto en ley." (Énfasis nuestro.) *Garib Bazaín v. Hosp. Aux. Mutuo, et al.,* 204 DPR 601, 622 (2020). Dicha intención se fortalece en el Artículo 1 de la Ley Núm. 254-1974, el cual dispone que, en el caso de que no hayan transcurrido los términos establecidos, el exconvicto puede obtener un certificado de rehabilitación y capacitación para trabajar que podrá sustituir el denominado certificado de buena conducta. Sin embargo, el estatuto reserva el derecho del patrono a "solicitar el certificado de buena conducta, en adición al certificado de rehabilitación". 34 LPRA sec. 1725.

En lo atinente al caso del epígrafe, en *Rivera Pagán v. Supte. Policía de P.R.*, 135 DPR 789 (1994), el Tribunal Supremo enfrentó una controversia similar. Allí, el señor Rivera Pagán, quien había eliminado sus convicciones del certificado de antecedentes penales y ostentaba buena reputación entre sus vecinos, demandó al Estado por denegarle una licencia de armas. El recurrido prevaleció en la primera instancia judicial.

En ese caso, mientras la derogada Ley de Armas de 1951 aplicable en aquel momento impedía la expedición de la licencia de armas a los convictos de los delitos enumerados o sus tentativas,[19] la Ley Núm. 108 de 21 de junio de 1968, "Ley de Eliminación de Convicciones de Delitos Menos

---

[19] Refiérase al Artículo 17 de la Ley de Armas de 19 de enero de 1951, 25 LPRA sec. 427 (derogado), el cual disponía, en parte, que "[e]l Superintendente de la Policía de Puerto Rico no expedirá licencia para tener y poseer un arma de fuego a persona alguna que haya sido convicta, en o fuera de Puerto Rico, de cualquiera de los siguientes delitos o de tentativa para cometer los mismos: asesinato en cualquier grado, homicidio, secuestro, violación, mutilación, tentativa de cualquier delito grave, agresión agravada, cuando este delito se haya realizado con un arma cortante, punzante o de fuego, robo, escalamiento, apropiación ilegal, apropiación ilegal agravada, incendio, incendio agravado, incesto, […]."

Graves del Récord Penal", 34 LPRA sec. 1731, *et seq.* (derogada), equivalente a la Ley Núm. 254-1974, permitía la eliminación de cualquier convicción, salvo ciertos delitos especificados y aquellos que implicaran depravación moral. Nuestro Tribunal Supremo analizó si las dos tentativas de asesinato, por las cuales el señor Rivera Pagán fue convicto junto a otros delitos, implicaban depravación moral. Contestó en la afirmativa. Por consiguiente, la Máxima Curia revocó al foro impugnado y sostuvo la denegación del Superintendente de la Policía, como sigue:

> […] resolvemos que actuó acertadamente el Superintendente de la Policía de Puerto Rico al **descartar la resolución dictada por la Sala de Manatí del Tribunal de Distrito de Puerto Rico, mediante la cual se ordenó la eliminación del expediente penal** del recurrido Luis Rivera Pagán (sus dos (2) convicciones por los delitos de tentativa de asesinato), cuando **denegó la solicitud de este para tener y poseer un arma de fuego por razón de la prohibición contenida en el Art. 17 de la Ley de Armas de Puerto Rico**, *supra*. (Énfasis nuestro.) *Rivera Pagán v. Supte. Policía de P.R.*, *supra*, a la pág. 801.

Ahora, sobre la prohibición expresamente estatuida en el referido Artículo 17 de la Ley de Armas de 1951, que guardaba similitud con el actual Artículo 2.09 de la Ley de Armas de 2020, *supra*, el Alto Foro opinó que, de su lectura, se desprendía con claridad que una persona convicta por los delitos exceptuados "no podrá gozar del privilegio de obtener una licencia para tener y poseer un arma de fuego." *Rivera Pagán v. Supte. Policía de P.R.*, *supra*, a la pág. 794.[20]

En el contexto del ordenamiento anterior, Ley Núm. 404 de 11 de septiembre de 2000, 25 LPRA sec. 455 *et seq.* (derogada), el Tribunal Supremo resolvió el caso *Rolón Martínez v. Supte. Policía*, 201 DPR 26 (2018). Si bien el mencionado estatuto incluía la prohibición de expedir licencias a los convictos de cualquier delito grave o su tentativa,[21] también

---

[20] Cabe señalar que, en *Rivera Pagán v. Supte. Policía de P.R.*, *supra*, a las págs. 806-809, la Opinión disidente del juez asociado, Hon. Rebollo López, se adhirió a lo resuelto en *Pueblo v. Ortiz Martínez*, 123 DPR 820 (1989) y *Muñoz, Torres v. Superintendente Policía,* 125 DPR 603 (1990), los casos bajo los cuales, en esencia, se fundamentó el dictamen apelado.

[21] Véase el Artículo 2.11 de la Ley de Armas de 2000, 25 LPRA sec. 456j (derogado) que rezaba, en lo pertinente, como sigue: "El Superintendente no expedirá licencia de armas ni el Secretario del Departamento de Hacienda expedirá licencia de armero, o de haberse expedido se revocarán y el Superintendente se incautará de la licencia y de las armas y municiones de cualquier persona que haya sido convicta, en o fuera de Puerto Rico, de cualquier delito grave o su tentativa, […]."

aludía al *historial de violencia*.[22] En ese caso, que versaba sobre una revocación de la licencia de armas, nuestro Tribunal Supremo concluyó que no era necesario ser encontrado culpable en el ámbito penal (lo que equivale a poseer un certificado negativo de antecedentes penales) para sostener una determinación de que la persona tenía un historial de violencia y, en consecuencia, no tener derecho a la licencia de armas, ya fuera no concediéndola o revocándola. Por tanto, la mera tenencia de un certificado negativo de antecedentes penales, por sí, resultaba insuficiente, ya que "ser encontrado culpable por algún delito y tener un historial de violencia son dos requisitos distintos y separados." *Id.*, a la pág. 44.[23]

**C. Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del Estado Libre Asociado de Puerto Rico y del Sistema de Información de Justicia Criminal**

La Ley Núm. 143 de 26 de agosto de 2014 "Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del Estado Libre Asociado de Puerto Rico y del Sistema de Información de Justicia Criminal", 4 LPRA sec. 533 *et seq.*, tiene como propósito establecer "un sistema tecnológico y procedimiento uniforme que permita el **intercambio efectivo de información entre las entidades gubernamentales del Estado Libre Asociado de Puerto Rico relacionadas con la seguridad pública del país** y aquellas que se encuentran estrechamente vinculadas con las mismas, de manera tal que se alcance el mejor funcionamiento del Sistema de Información de Justicia Criminal." (Énfasis nuestro.) Art. 2, Ley Núm. 143-2014, 4 LPRA sec. 533. El Art. 3a (a) del estatuto, 4 LPRA sec. 534a (a), define *Sistema de Información de Justicia Criminal (SIJC) o Sistema* como "el sistema encargado de **proveer información completa y correcta** a los varios integrantes del Sistema de Justicia Criminal en Puerto Rico." (Énfasis nuestro.) El SIJC, adscrito al Departamento de Justicia, está compuesto por los integrantes del Sistema de Justicia Criminal en Puerto Rico, a saber:

---

[22] Refiérase al Artículo 2.02 (a) (7) de la Ley de Armas de 2000, 25 LPRA sec. 456a (a) (7) (derogado).
[23] Es meritorio mencionar que la Ley de Armas de 2020, *supra*, suprimió la frase *historial de violencia*.

el Departamento de Justicia, la Policía de Puerto Rico, el Poder Judicial, el Departamento de Corrección y Rehabilitación, el Departamento de la Familia, el Departamento de Transportación y Obras Públicas y el Instituto de Ciencias Forenses. Art. 4 Ley Núm. 143-2014, 4 LPRA sec. 533b.

En cuanto al "Protocolo", el Art. 3a (c) de la Ley Núm. 143-2014, 4 LPRA sec. 534a (c), lo describe como "aquel **conjunto de normas y procedimientos** preparado por el Comité [Intergubernamental] y **adoptado por todas las entidades gubernamentales** con inherencia en la seguridad pública del país y aquellas que se encuentran estrechamente relacionadas con las mismas, las cuales se describen en esta Ley." (Énfasis nuestro.) De esta forma, se puntualiza lo siguiente:

> **En el Protocolo se podrá disponer cualquier otra información de naturaleza criminal que las que las entidades gubernamentales que componen el Comité entiendan que debe formar parte de la información disponible en el Sistema, por su relevancia para la seguridad en el país y para el cumplimiento de los propósitos del Sistema**. […] Asimismo, **tomará todas las medidas necesarias para asegurarse de que todo dato relativo a convicciones cuya eliminación del récord penal de una persona haya sido ordenado por un Tribunal competente sea efectiva y totalmente eliminada del Sistema de Información de Justicia Criminal, incluyendo, pero sin que esto se entienda como una limitación, las memorias de cualesquiera computadoras utilizadas por el Sistema**. (Énfasis nuestro.) Art. 8 Ley 143-2014, 4 LPRA sec. 533e.

**III**

La parte apelante nos señala que el TPI se equivocó al resolver que el Negociado no puede considerar las convicciones por los **delitos graves que conllevan conducta constitutiva de violencia doméstica bajo lo dispuesto en el Ley Núm. 54-1989 y por maltrato de menores conforme a lo dispuesto en la Ley Núm. 246-2011 del señor Areizaga** para denegarle la licencia de armas, porque esos delitos no estaban contenidos en el Artículo 2.09 de la Ley de Armas de 2020, *supra*, y porque el apelado cumplió con la presentación de un certificado negativo de antecedentes penales. El Estado, por su parte, plantea que el señor Areizaga está excluido de poseer una licencia de armas por disposición expresa de la Ley de Armas de 2020, *supra*. Sostiene que la convicción de cualquier delito

grave está incluida en el Artículo 2.09 de la Ley de Armas de 2020, *supra*, e impide la expedición de la credencial.

Según reseñamos, el señor Areizaga fue convicto por delitos graves que conllevan conducta constitutiva de violencia doméstica bajo lo dispuesto en el Ley Núm. 54-1989 y por maltrato de menores conforme a lo dispuesto en la Ley Núm. 246-2011 por delito de *Agresión Grave*, Artículo 122 del Código Penal de 2004, tipificado como un delito grave de cuarto grado y por el que fue sentenciado a cinco años en probatoria. Extinguida la sentencia y cumplidos los requisitos de rigor de la Ley Núm. 254-1974, en el año 2020, por virtud de una *Resolución* dictada por un tribunal competente, el apelado obtuvo la eliminación de esos delitos de su expediente penal. Consiguientemente, se expidió a su favor un certificado negativo de antecedentes penales. De conformidad con la Ley Núm. 143-2014, la eliminación de la convicción aplica también al SIJC.

Posteriormente, el señor Areizaga presentó la *Solicitud de Licencia de Armas* en controversia. Para ello, cumplió con los requisitos del Artículo 2.02 (a) (b) (c) de la Ley de Armas de 2020, *supra*, incluyendo el certificado negativo de antecedentes penales. De conformidad con el estatuto, el siguiente paso era **el cotejo electrónico del expediente negativo de antecedentes penales**, así como la **certificación del cumplimiento con los requisitos de ley**, mediante una investigación en los **archivos digitales en los que el Negociado tuviera acceso**, según mandata el Artículo 2.02 (d) (1) (3) (4) de la Ley de Armas de 2020, *supra*. Realizada la investigación, esta produjo un resultado desfavorable para el señor Areizaga, al desvelarse las aludidas convicciones de delito grave. El Estado expone en su recurso ante nosotros lo siguiente:

> [S]i bien la Ley Núm. 254-1974 provee para la eliminación de convicciones en el certificado de antecedentes penales, esto no implica que el Sr. Areizaga Rivera tiene derecho a la concesión de la licencia de armas de **forma automática** al presentar un certificado negativo de antecedentes penales. Por el contrario, la Ley Núm. 168 no autoriza al Negociado de la policía a expedir automáticamente una licencia de armas únicamente cuando el solicitante presenta un certificado negativo de antecedentes penales, sin tomar en cuenta otras

consideraciones que dispone la legislación, como los archivos digitales.[24]

Ciertamente, existen registros de dependencias estatales, federales e internacionales, en los que el Negociado no tiene potestad alguna. El Negociado, sin embargo, puede y debe acceder estos registros de datos en el ejercicio de sus investigaciones para, entonces, poder certificar que los peticionarios de licencias de armas cumplen o no con los requisitos de la Ley de Armas de 2020.

Al amparo del Artículo 2.09 de la Ley de Armas de 2020, *supra*, que estatuye los **fundamentos para rehusar y revocar la expedición de la licencia de armas**, la persona convicta de cualquier delito grave está excluida de la tenencia de una licencia de armas. A la luz de esta disposición, la Asamblea Legislativa desautorizó al Negociado a expedir licencias de armas a aquellas **personas convictas de cualquier delito grave** y, en el caso de haberlas emitido, entonces, revocarlas. Esto es, **el hecho de la convicción por delito grave es un fundamento independiente para denegar la expedición de la licencia de armas**. Así pues, el TPI incidió al determinar que los delitos por los cuales fue convicto el apelado no estaban contenidos en el Artículo 2.09 de la Ley de Armas de 2020, *supra*.

En cuanto a la presentación de un certificado negativo de antecedentes penales, luego de un análisis integral de los estatutos aplicables, concluimos que, aun cuando el apelado cuente con el referido documento, este es insuficiente para que el Negociado considere su *Solicitud de Armas*. La investigación realizada por el Negociado en las plataformas digitales a las que tiene acceso arrojó las convicciones del apelado por delito grave. A pesar de que la Ley Núm. 254-1974 provee para la eliminación de convicciones del certificado de antecedentes penales, con el fin de propender a la rehabilitación de los exconvictos y facilitar su inserción en la fuerza laboral, **la Asamblea Legislativa proscribió la**

---

[24] Véase, *Apelación*, a la pág. 15.

**concesión de una licencia de armas a quien presente una convicción por cualquier delito grave**. Huelga decir que dicha prohibición ha sido consistente en las legislaciones predecesoras y refrendada por la jurisprudencia.

Como se sabe, cuando la letra de una ley no tiene ambigüedades y su lenguaje es claro y sencillo, como en efecto ocurre en el caso de autos, en nuestra función interpretativa, los tribunales no estamos autorizados a añadir o restar condiciones que no fueron contempladas por el legislador al momento de promulgar el estatuto. *Cancio Ex parte*, 161 DPR 479, 490 (2004). La intención del legislador al aprobar la Ley de Armas de 2020 fue que el Negociado determine y certifique por escrito si un peticionario cumple o no con **todos los requisitos estatuidos** para la expedición de la licencia de armas. Para ello, se deben cumplir varios criterios generales, como la presentación de un certificado negativo de antecedentes penales, **sujeto a cotejo** mediante una investigación en los archivos digitales de cualquier agencia gubernamental de Puerto Rico, Estados Unidos o el extranjero a los que pueda tener acceso el Negociado, de manera que no exista fundamento alguno para rehusar de plano la expedición de la licencia de armas. En el presente caso, es forzoso concluir que el señor Areizaga no satisfizo la totalidad de los requisitos estatuidos para obtener una licencia de armas. Somos del criterio que el Negociado estaba impedido de ignorar los hallazgos de la investigación y, tal como lo hizo, podía descartar el certificado negativo de antecedentes penales ante sí y, en consecuencia, denegar la licencia de armas solicitada, por el incumplimiento del Artículo 2.09 de la Ley de Armas de 2020, *supra*.

**IV**

Por los fundamentos expuestos, revocamos la *Sentencia* impugnada. En consecuencia, se restituye la denegación del Negociado de la Policía de Puerto Rico.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones